UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------

WELLSVILLE MANOR LLC,

                         Plaintiff,                       **MEMORANDUM & ORDER**
                                                 22-CV-1229 (MKB)

      v.

GREAT AMERICAN INSURANCE COMPANY,

                         Defendant.
-------------------------------------------------------------

GREAT AMERICAN INSURANCE COMPANY,

                         Third-Party Plaintiff,

      v.

BOOM CONSTRUCTION CORP.,

                         Third-Party Defendant.
-------------------------------------------------------------

BOOM CONSTRUCTION CORP.,

                         Fourth-Party Plaintiff,

      v.

EVANSTON INSURANCE COMPANY,

                         Fourth-Party Defendant.
-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Wellsville Manor LLC ("Wellsville Manor") commenced this action against

Defendant/Third-Party Plaintiff Great American Insurance Company ("Great American") on

March 7, 2022, in the United States District Court of the Eastern District of New York for breach

of contract.  (*See* Complaint ("Compl."), Docket Entry No. 1.)  Plaintiff alleges that Great American, a New York insurer, breached the insurance policy (the "Policy") covering the property located at 4192A Bolivar Road, Wellsville, New York (the "Property"), by failing to indemnify Plaintiff for damages to the Property.  (*Id.* ¶¶ 4, 6, 7, 10, 11.)  On March 30, 2023, Great American commenced a third-party subrogation action against Third-Party Defendant/Fourth-Party Plaintiff Boom Corporation Corp ("Boom"), alleging that Boom, due to its negligence during the replacement of the roof of the Property, is liable to Great American in subrogation for any amount Great American pays to Wellsville Manor in the lawsuit ("Third-Party Action").[1]  (Third-Party Complaint ("Third-Party Compl.") 3, ¶¶ 11–18, Docket Entry No. 18.)  On March 22, 2024, Boom subsequently sued Evanston Insurance Company ("Evanston"), Boom's insurance provider with whom Boom had a commercial general liability insurance policy, alleging that Evanston violated the insurance policy by failing to provide Boom coverage for the Third-Party Action ("Fourth-Party Action").  (*See* Fourth-Party Compl.)

Currently before the Court are (1) Evanston's motion to dismiss the Fourth-Party Action based on Boom's inability to prosecute its claim due to lack of counsel, and (2) Great American's motion for default judgment against Boom.[2]  For the reasons explained below, the Court grants both motions.

---

[1]  The Fourth-Party Complaint notes that the case caption inaccurately names Boom as "Boom Construction Corp" but the correct name is Boom's Construction Corp.  (*See* Fourth-Party Complaint ("Fourth-Party Compl."), Docket Entry No. 42.)  The Court refers to the parties as they are named in the case caption.

[2]  (Evanston's Mot. to Dismiss ("Evanston's Mot."), Docket Entry No. 80; Evanston's Mem. in Supp. of Evanston's Mot. ("Evanston's Mem."), Docket Entry No. 80-1; Great American's Mot. for Default J. ("Great American's Mot."), Docket Entry No. 82; Great American's Mem. in Supp. of Great American's Mot. ("Great American's Mem."), Docket Entry No. 82-29.)

## I.  Background

The facts alleged in the Third-Party Complaint and Fourth-Party Complaint are assumed to be true for the purpose of deciding Evanston's and Great American's motions.[3]  Great American issued the Policy covering the Property to Plaintiff.  (Third-Party Compl. 2, ¶ 1.)  On June 3, 2021, Plaintiff hired Boom to replace the roof of the Property and Boom removed "the sea gravel ballast layer of the roof" which "hold[s] down the membrane of the roof."  (*Id.* at 2, ¶¶ 3–5.)  Boom did not install a "temporary ballast" or "utilize any other mechanism to adhere the existing membrane to the roof deck."  (*Id.* at 2, ¶ 6.)  On June 28, 2021, during a storm, a portion of the membrane flew up and rainwater entered the Property resulting in water damage.  (*Id.* at 2, ¶¶ 7, 8.)

Plaintiff sought $600,000 in damages from Great American and Great American initiated a third-party subrogation claim against Boom to recover the $10,000 it had already paid Plaintiff pursuant to the Policy and any additional amount that Great American may be required to pay to

---

[3]  In support of its motion to dismiss, Evanston relies on the Third-Party Complaint to provide factual background.  (*See generally* Evanston's Mem.)  On a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint" but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see Nicosia  v.  Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *see also, e.g.*, *Glob. Network Commc'ns., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (finding reversible error where the district court considered defendant's submission of a trial transcript in an unrelated proceeding and relied on it to "make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint").  Boom references the Third-Party Action in the Fourth-Party Complaint and the Fourth-Party Action is fundamentally based on the Third-Party Action.  (*See* Fourth-Party Compl. ¶¶ 8, 9, 10, 12).  The Court therefore considers the Third-Party Complaint as integral to the Fourth-Party Complaint.

Plaintiff in the primary action.  (*Id.* at 2, ¶¶ 9, 10; 3, ¶¶ 16, 17, 18; Insurance Policy, annexed to

Great American's Mot. as Ex. 1, Docket Entry No. 82-2.)

Boom maintained a commercial general liability insurance policy, policy number

3FA2017, with Evanston.  (Fourth-Party Compl. ¶ 3.)  The policy between Boom and Evanston

insured Boom "from December 13, 2020 to December 13, 2021, to pay those sums that [Boom

became] legally obligated to pay as damages because of 'bodily injury' or 'property damage' to

which said policy applie[d]; and moreover, to defend [Boom] against any 'suit' seeking those

damages."  (*Id.* ¶ 4.)  Boom sought coverage from Evanston for the Third-Party subrogation

claim which Evanston disclaimed.  (*Id.* ¶¶ 9–10.)  Boom therefore filed the Fourth-Party Action

against Evanston on March 22, 2024.  (*See* Fourth-Party Compl.)  On August 5, 2024, Evanston

filed a pre-motion conference request to file its motion to dismiss the Fourth-Party Action and

Boom opposed the request.  (Evanston's Pre-Motion Conf. Ltr., Docket Entry No. 57; Boom's

Response to Evanston's Pre-Motion Conf. Ltr., Docket Entry No. 61.)

On August 19, 2024, Boom's counsel moved to withdraw as counsel.  (Mot. to

Withdraw, Docket Entry No. 59.)  On August 23, 2024, Magistrate Judge Joseph A. Marutollo

held a pre-motion conference and ordered Boom to obtain new counsel by September 12, 2024,

and file a status report identifying the new counsel.  (Minute Entry Aug. 23, 2024.)  On

September 12, 2024, Boom's counsel filed a letter stating that (1) the Court's August 23, 2024

Order had been served on Boom on August 23, 2024, (2) that Boom was informed of its

"obligation to obtain substitute counsel" by September 12, 2024 and to attend a scheduled status

conference on September 13, 2024, and (3) Boom did not respond to counsel on its course of

action to retain counsel.  (Ltr. of James P. Giambrone, Jr. ("Giambrone Ltr."), dated Sept. 12,

2024, Docket Entry No. 69.)  Boom failed to appear at the September 13, 2024 conference, and

4

Judge Marutollo granted Boom counsel's motion to withdraw and directed Great American to file a request for a certificate of default as to Boom.  (Minute Entry Sept. 13, 2024.)  Great American filed the request and served it on Boom on September 26, 2024.  (Great American's Request for Cert. of Default, Docket Entry No. 70.)  On October 1, 2024, due to Boom's failure to appear or defend the action, the Clerk of the Court entered a certificate of default, certifying "that Boom Construction has not retained counsel."  (Certificate of Default, Docket Entry No. 72.)  The Certificate of Default was served on Boom on November 20, 2024.  (Affidavit of Service, Docket Entry No. 76.)

On January 6, 2025, Evanston filed its motion to dismiss and Great American filed its motion for default judgment.  (*See* Evanston's Mot.; Great American's Mot.)

## II.  Discussion

### a.  Standards of review

#### i.  Rule 41(b)

"Rule 41(b) of the Federal Rules of Civil Procedure authorizes the district court to dismiss an action '[i]f the plaintiff fails to prosecute or to comply with [the] rules or a court order.'"  *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (alterations in original); *see also United States ex rel. Weiner v. Siemens AG*, 87 F.4th 157, 163 (2d Cir. 2023) ("Under Rule 41(b), a district court, in its discretion, may dismiss an action for a plaintiff's want of prosecution." (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993))).  Dismissal pursuant to Rule 41(b) is, however, a "harsh remedy" to be "reserved for 'extreme situations.'"  *Id.* (quoting *Minnette*, 997 F.2d at 1027); *Heendeniya v. St. Joseph's Hosp. Health Ctr.*, 830 F. App'x 354, 357 (2d Cir. 2020) (observing that because "dismissal under Rule 41(b) is 'the harshest of sanctions,'" it "is properly 'used only in extreme situations'" (quoting *Baptiste*, 768

F.3d at 217)).  When district courts assess whether dismissal under Rule 41(b) is appropriate, they must consider the "*Drake* factors," namely whether:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*Mayanduenas v. Bigelow*, 849 F. App'x 308, 310–11 (2d Cir. 2021) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)); *see also Kaplan v. Hezbollah*, 844 F. App'x 459, 460 (2d Cir. 2021) (quoting *Baptiste*, 768 F.3d at 216) (considering the same five factors).  Courts must "evaluate the record in its entirety because '[n]o one factor is dispositive.'"  *Weiner*, 87 F.4th at 164 (alteration in original) (quoting *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)).  "As 'no one factor is dispositive,' courts need only provide an explanation for the dismissal rather than consider each factor."  *Nodify, Inc. v. Kristan*, No. 17-CV-2201, 2020 WL 13566475, at *1 (E.D.N.Y. Apr. 17, 2020) (quoting *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001)), *report and recommendation adopted*, 2020 WL 13566476 (E.D.N.Y. May 6, 2020).  "When imposed, the sanction of dismissal 'operates as an adjudication upon the merits,' but may be without prejudice if so specified by the court imposing it."  *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982) (quoting Fed. R. Civ. P. 41(b)).

### ii.    Rule 55

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see also Am. Transit Ins. Co. v. Pierre*, No. 24-CV-360, 2025 WL 863865, at *2 (E.D.N.Y. Mar.

6

19, 2025) (explaining that there is a "'two-step process' for the entry of judgment against a party who fails to defend" (quoting *Mickalis Pawn Shop*, 645 F.3d at 128)). "[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citing *Mickalis Pawn Shop*, 645 F.3d at 137); *see also U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-CV-3966, 2025 WL 1042416, at *1 (S.D.N.Y. Apr. 8, 2025) (same); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (explaining that a district court deciding a motion for default judgment "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor" (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *see also Wells Fargo Bank, N.A. v. Queen Tec Support Inc.*, No. 23-CV-4462, 2025 WL 939225, at *3 (E.D.N.Y. Mar. 28, 2025) (explaining that the allegations supporting a default judgment must be "sufficient to state a cause of action against the defendant" (citation omitted)); *LG Funding, LLC v. Fla. Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) ("To determine whether the default judgment should issue, the [c]ourt examines whether 'the factual allegations, accepted as true, provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))). However, because there is "'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . a district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104;

and then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)),

and "all doubts must be resolved in favor of the [defaulting] party." *Green*, 420 F.3d at 104

(citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)); *Hellman v. Cortland*

*Realty Invs. LLC*, No. 22-CV-8341, 2025 WL 415388, at *2 (S.D.N.Y. Feb. 6, 2025) ("In the

Second Circuit, there is a strong 'preference for resolving disputes on the merits.'" (first quoting

*Enron Oil Corp.*, 10 F.3d at 95; and then quoting *Johnson v. N.Y. Univ.*, 800 F. App'x 18, 20 (2d

Cir. 2020))). "The entry of a default, while establishing liability, 'is not an admission of

damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Finkel*, 577 F.3d at 83 n.6). "There

must be an evidentiary basis for the damages sought by plaintiff, and a district court may

determine there is sufficient evidence either based upon evidence presented at a hearing or upon

a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist.*

*Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first

citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d

38, 40 (2d Cir. 1989)); *see also Sheet Metal Workers Loc. Union No. 46 Health Fund by Milne v.*

*T.J.V. Mech. LLC*, No. 24-CV-6281, 2025 WL 825308, at *7 (W.D.N.Y. Mar. 17, 2025) (same).

### b.    Evanston's motion to dismiss for failure to prosecute

Evanston argues that because the Court "granted Boom's counsel's motion to withdraw,

and Boom has not appeared through new counsel," Boom "cannot prosecute its claims against

Evanston" and therefore the Fourth-Party Complaint should be dismissed. (Evanston's Mem. 3.)

In evaluating the relevant factors, the Court finds that they weigh in favor of dismissal.

First, despite being informed of its obligation and that a corporation "can only appear in court

through an attorney, and may not proceed pro se," (Minute Entry Aug. 23, 2024 (quoting

*Gutierrez v. Bldg. Servs., Inc.*, No. 22-CV-5928, 2023 WL 9232947, at *1 (E.D.N.Y. Dec. 19,

2023))), Boom failed to retain counsel pursuant to the Court's August 23, 2024 Order.  *See Masjid Al-Arapha, Inc. v. JPMorgan Chase Bank, N.A.*, No. 21-CV-2153, 2022 WL 4329459, at *3 (E.D.N.Y. Sept. 19, 2022) (dismissing action because, *inter alia*, "dismissal [was] . . . warranted for [the p]laintiff's attorney failing to file an appearance" and "[i]t is well established that a corporation cannot proceed pro se because an artificial entity can only act through agents" (citation omitted)).  Second, more than nine months have lapsed since Boom's counsel's withdrawal from this action on September 13, 2024.  (Minute Entry dated Sept. 13, 2024.)  The Court gave Boom twenty-one days to find counsel, but it failed to do so, and Boom has not requested additional time to obtain counsel.  Moreover, in the last several months, Boom has not notified the Court of any attempts to obtain counsel.  Boom's failure to obtain counsel therefore warrants dismissal.  *Ruzsa v. Rubenstein & Sendy Attys at L*., 520 F.3d 176, 177 (2d Cir. 2008) (dismissing action and finding that the "plaintiff caused a delay of significant duration in [the] litigation, as the proceedings ground to a halt for over seven months as a result of his inaction" (internal quotation marks omitted)); *Lyell Theatre Corp.*, 682 F.2d at 42–43 (stating that inaction "may warrant dismissal after merely a matter of months" (citation omitted)).  Moreover, Boom has also failed to appear at two Court conferences — first failing to appear at the August 23, 2024 conference, and again failing to send a principal to appear at the September 13, 2024 status conference, further delaying resolution and conclusion of the action.  (Minute Entry dated Aug. 23, 2024; Minute Entry dated Sept. 13, 2024); *see Djokovic v. U.S. Justice Dep't*, No. 07-CV-2608, 2008 WL 3200191, at *1 (E.D.N.Y. Aug. 6, 2008) (dismissing action for failure to prosecute where the plaintiffs "failed to appear at [two] conference[s] or to request an adjournment").

        Because Boom has failed to obtain counsel as required by Rule 41(b) of the Federal

Rules of Civil Procedure, and has therefore failed to prosecute its case, the Court grants

Evanston's motion and dismisses the Fourth-Party Action.

### c.   Great American's motion for default judgment

Great American argues that its motion for default judgment should be granted because

"Boom ignored a clear directive by the Court to obtain new counsel by a date certain to defend

against Great American's subrogation claim" and that, should the motion not be granted, Great

American will "sustain prejudice on the basis that it would be unable to recover against

Boom . . . ."  (Great American's Mem. 1.)

### i.   Default judgment factors

In determining whether to grant a default judgment, the court looks to the same factors

which apply to a motion to set aside a default judgment, namely: (1) "whether the defendant's

default was willful"; (2) "whether [the] defendant has a meritorious defense to [the] plaintiff's

claims"; and (3) "the level of prejudice the non-defaulting party would suffer as a result of the

denial of the motion for default judgment."  *United States v. Myers*, 236 F. Supp. 3d 702, 706

(E.D.N.Y. 2017) (citation omitted); *see Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–

71 (2d Cir. 2001) ("When deciding whether to relieve a party from default or default judgment,

we consider the willfulness of the default, the existence of a meritorious defense, and the level of

prejudice that the non-defaulting party may suffer should relief be granted."  (citation omitted));

*Lopez v. Hero Rider USA, LLC*, No. 22-CV-1428, 2023 WL 6226263, at *3 (E.D.N.Y. Sept. 26,

2023) ("Courts use the same three-factor test used to set aside a default judgment to determine

whether to grant a default judgment." (first citing *Enron Oil Corp.*, 10 F.3d at 96; and then citing

*Avail 1 LLC v. Latief*, No. 17-CV-5841, 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020))).

A default is willful if it is "'more than merely negligent or careless,' but is instead 'egregious

and . . . not satisfactorily explained.'"  *Bricklayers*, 779 F.3d at 186 (quoting *S.E.C v. McNulty*,

137 F.3d 732, 738 (2d Cir. 1998)); *see also Jaramillo v. Vega*, 675 F. App'x 76, 76 (2d Cir. 2017) (same); *NuBridge Commerical Lender REO SPV I Inc. v. KA & B Props., Inc.*, No. 22-CV-1468, 2024 WL 1364321, at *3 (E.D.N.Y. Mar. 31, 2024) (same).  "Although more than mere negligence is required, 'the degree of negligence in precipitating the default is a relevant factor to be considered.'" *Jaramillo*, 675 F. App'x at 76–77 (quoting *Green*, 420 F.3d at 108). Where a defendant provides no justification for the failure to respond, the defendant's default may be considered egregious and not satisfactorily explained.  *Green*, 420 F.3d at 109 (finding default willful where the defendants "offered no explanation for their counsel's failure to appear or seek an extension of time to respond to the complaint" nor "any justification for their own failure to take action after receiving notice that the clerk had entered a default against them"). Furthermore, "[t]he existence of a meritorious defense is a key factor" in the default judgment analysis.  *Green*, 420 F.3d at 109.  A defaulting defendant bears the "burden of offering evidence sufficient to establish a complete defense." *Bricklayers*, 779 F.3d at 187 (citing *State St. Bank & Tr. Co.*, 374 F.3d at 167).  "[T]he defaulting party need not establish his defense conclusively, but he must present credible evidence of facts that would constitute a complete defense." *Beyonics Int'l PTE Ltd. v. Smith*, 833 F. App'x 492, 493 (2d Cir. 2020) (citing *Enron Oil Corp.*, 10 F.3d at 98); *see also Gardner v. Lefkowitz*, 737 F. App'x 597, 598 (2d Cir. 2018) ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make." (quoting *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61(2d Cir. 1996))).  A defendant "must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Bricklayers*, 779 F.3d at 187 (quoting *Green*, 420 F.3d at 110); *Colonial Surety Co. v. William G. Prophy LLC*, 20-CV-1730, 2023 WL 7338784, at *6 (E.D.N.Y. Nov. 7, 2023) (explaining that an answer containing "only general denials and affirmative defenses . . . is

11

inadequate to establish a meritorious defense for purpose of a default judgment analysis" (citations omitted)). Finally, in determining whether to enter an entry of default judgment, a court must consider "whether and to what extent, [entering] . . . the default judgment will prejudice the non-defaulting party." *Green*, 420 F.3d at 110. Accordingly, in determining whether a plaintiff has suffered prejudice, courts consider "the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy, resulting in the loss of evidence, creating increased difficulties of discovery, or providing greater opportunity for fraud and collusion." *Millennial Plastic Surgery PLLC v. James*, No. 21-CV-9590, 2022 WL 769292, at *4 (S.D.N.Y. Feb. 10, 2022) (alteration omitted) (quoting *Swarna v Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010)); *see also Green*, 420 F.3d at 110 (explaining that "[s]omething more [than delay] is needed" including [f]or example, [that] delay 'may thwart plaintiff's recovery or remedy," "result in the loss of evidence," create increased difficulties of discovery, or provide greater opportunity for fraud and collusion"). "To meet this standard, 'the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the [c]ourt in another manner were the default to be [not entered or] vacated." *Weingeist v. Tropix Media & Ent.*, No. 20-CV-275, 2022 WL 970589, at *11 (S.D.N.Y. Mar. 30, 2022) (quoting *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12-CV-52, 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013)).

Boom's default was willful based on Boom's (1) failure to obtain new counsel per the Court's August 23, 2024 order, despite being informed of its obligation and that corporate defendants could not proceed *pro se*, (Minute Entry dated Aug. 23, 2024; Giambrone Ltr.), (2) failure to appear at the September 13, 2024 conference, (Minute Entry dated Sept. 13, 2024), (3) failure to respond to Great American's request for Certificate of Default, (Request for Cert. of

Default), and (4) failure to oppose Great American's motion for default judgment, (*see* Great American's Mot.).  *See Colonial Surety Co.*, 2023 WL 7338784, at *6 (concluding that corporate defendants' conduct was "indisputably willful" where corporate defendants failed to appear with new counsel, they "ignored the [c]ourt's warnings that [they] could not proceed *pro se*," and they failed to oppose the motion for default judgment "despite having been served with a copy of the motion"); *see, e.g.*, *Powerserve Int'l, Inc.*, 239 F.3d at 514 (upholding default judgment where individual and corporate defendants did not obtain counsel in the time frame ordered by the court); *see also Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (same); *Trs. of Bldg. Trades Educ. Benefits Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) (same), *report and recommendation adopted*, 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021).  This factor therefore weighs in favor of granting the default motion.

In addition, Boom fails to show that it has a meritorious defense to the Third-Party Action.  Boom's answer in response to Great American's Third-Party Complaint contains only general denials and affirmative defenses which are inadequate to establish a meritorious defense for purposes of a motion for default judgment.  (*See generally* Answer to Third-Party Compl., Docket Entry No. 24.); *Colonial Surety Co.*, 2023 WL 7338784, at *7 (finding the meritorious defense factor weighed in favor of the plaintiff because defendant's answer only contained general denials and affirmative defenses (citing *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-CV-5270, 2013 WL 1335997, at * 6 (E.D.N.Y. Feb. 28, 2013), *report and recommendation adopted*, 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013))); *see Goo v. Hand Hosp. LLC*, No. 23-CV-8235, 2025 WL 357745, at *3 (S.D.N.Y. Jan. 31, 2025) (finding that "[d]efendants d[id] not attempt to offer any evidence of [their] defense and fail[ed] to 'present more than conclusory

13

denials when attempting to show the existence of a meritorious defense.'" (quoting *Pecarsky*, 249 F.3d at 173)); *Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 15-CV-2224, 2018 WL 6161655, at *6 (E.D.N.Y. Sept. 4, 2018) (finding that the defendant's answer which asserted eight affirmative defenses and conclusory general denials did not articulate a meritorious defense, and the meritorious defense was only later established at a hearing on the motion to vacate when the defendant's counsel provided underlying supporting facts for the denials (citation omitted)), *report and recommendation adopted*, 2018 WL 4771897 (E.D.N.Y. Oct. 3, 2018); *see also Lazic v. Dorian Owners, Inc.*, No. 10-CV-1824, 2011 WL 319879, at *1–2 (E.D.N.Y. Jan. 29, 2011) (denying the defendants' motion to vacate default judgment in part because the answer to the complaint included only general denials and affirmative defenses, which merely contradicted the allegations without proving any facts that would constitute a complete defense). This factor therefore weighs in Great American's favor.

Finally, Great American will suffer prejudice if its motion is denied because it will be unable to recover against Boom for the claims adequately alleged in the Third-Party Complaint. *See, e.g.*, *Trs. of Bldg. Trades Educ. Benefit Fund*, 2021 WL 3604811, at *4 (finding that the plaintiffs would be prejudiced because "in light of the defaulting [d]efendants' failure to obtain new counsel and [the] [p]laintiffs' interest in prosecuting their case, ignoring the default would prejudice [the] [p]laintiffs, 'as there are no additional steps available to secure relief in this [c]ourt'" (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008))). This factor therefore weighs in Great American's favor.

14

Accordingly, Great American is entitled to default judgment on its claim for which the well-pleaded allegations in the Third-Party Complaint establish Boom's liability. The Court considers the subrogation claim below.

### ii. Subrogation claim

"Subrogation is the right one party has against a third[-]party following payment, in whole or in part, of a legal obligation that ought to have been met by the third party." *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999) (citation and internal quotation marks omitted); *see also SOCAR (Societe Cameroonaise d'Assurance et de Reassurance) v. Boeing Co.*, 144 F. Supp. 3d 391, 395 (E.D.N.Y. 2015) (same); *Union Lab. Life Ins. Co. v. Olsten Corp. Health & Welfare Benefit Plan*, 617 F. Supp. 2d 131, 146 (E.D.N.Y. 2008) ("[T]he rule of equitable subrogation applied '[w]here property of one person [was] used in discharging an obligation owed by another . . . under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred.'" (second, third and fourth alterations in original) (quoting *In re Chateugay Corp.*, 89 F.3d 942, 947 (2d Cir. 1996))).

"The doctrine of equitable subrogation allows insurers to 'stand in the shoes' of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss." *SOCAR*, 144 F. Supp 3d at 395 (citation omitted); *see also Liberty Mut. Ins. Corp. v. New York Marine & Gen. Ins. Co.*, 590 F. Supp. 3d 597, 607 (S.D.N.Y. 2022) ("Subrogation is an equitable doctrine that 'allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.'" (quoting *Kaf-Kaf, Inc. v. Rodless Decorations, Inc.*, 90 N.Y.2d 654, 660 (1997))); *see also Cityside Archives, Ltd. v. Weiss*, No. 18-CV-5077, 2020 WL 3972310, at *4 (S.D.N.Y. July 13, 2020) (explaining that the purpose of subrogation is "to afford a person who pays a debt that is owed primarily by someone else every

opportunity to be reimbursed in full" (citation and internal quotation marks omitted)); *Union Lab. Life Ins. Co.*, 617 F. Supp. 2d at 146 ("Subrogation simply means substitution of one person for another; that is, that one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." (citation and internal quotations omitted)).

Under New York law, "two elements are necessary to establish a right of subrogation . . . . First the purported subrogee must have actually made payment to the subrogor for the subrogor's loss," and second, "the plaintiff must prove . . . that any payment to the subrogor was not made voluntarily but rather pursuant to some obligation running from the subrogee to the subrogor." *E. States Health & Welfare Fund v. Philip Morris, Inc.*, 11 F. Supp 2d 384, 397 (S.D.N.Y. 1998) (first citing *Teichman v. Cmty. Hosp. of W. Suffolk*, N.Y.2d 514, 521 (1996); and then citing *Reliance Ins. Co. v. Aerodyne Engineers Inc.*, 612 N.Y.S.2d 87 (App. Div. 1994)); *see also Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.*, No. 05-CV-217, 2008 WL 190310, at *7 (S.D.N.Y. Jan. 16, 2008) ("The volunteer doctrine states that one who pays a claim it is not obligated to pay is a volunteer as to that claim, and may not obtain subrogation of the claim from another party." (citations and internal quotation marks omitted)). "The insurer's rights against a third party are derivative and limited to the rights the insured would have against that third party." *Liberty Mut. Ins. Corp.*, 590 F. Supp. 3d at 607 (citing *Nationwide Mut. Ins. Co. v. U.S. Underwriters Ins. Co.*, 59 N.Y.S.3d 1, 2 (App. Div. 2017)).

To establish a prima facie case of negligence under New York law, "a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach." *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)); *see also In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758

F.3d 202, 210 (2d Cir. 2014) (similar) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d

417, 428 (2d Cir. 2013))).  Furthermore, a plaintiff must establish that their injury was

foreseeable.  *Aegis Ins. Servs. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013) ("[A]

plaintiff must establish that a harm was within the ambit of reasonably foreseeable risk . . . .");

*Pinero v. Rite Aid of N.Y., Inc.*, 743 N.Y.S.2d 21, 22 (App. Div. 2002) ("To establish a claim in

negligence, plaintiff must show that the defendant owed her a duty to protect her from injury; a

duty that only arises when the risk of harm is reasonably foreseeable."), *aff'd*, 99 N.Y.2d 895

(2002).

### 1.    Right of subrogation

Great American's factual allegations demonstrate that it has standing to sue Boom.  Great

American has shown that it paid $10,000 to Plaintiff for damages to the Property and did so

pursuant to the Policy covering the Property.  (Third-Party Compl. at 2, ¶ 10;3, ¶ 16; Decl. of

Mike Nelson ("Nelson Decl.") ¶ 6, annexed to the Third-Party Compl., Docket Entry No. 82-26);

*Catlin Syndicate 2003 v. Traditional Air Conditioning, Inc.*, No. 17-CV-2406, 2020 WL

5802275, at *1 (E.D.N.Y. Sept. 29, 2020) (finding that the insurer "became subrogated to the

rights of [the insured] to the extent of [its] payment under the terms of the insurance policy"); *see

also Homesite Ins. Co. v. Shenzhen Lepower Int'l Elecs. Co.*, No. 23-CV-981, 2024 WL 532444,

at *1 (N.D.N.Y. Feb. 8, 2024) (stating that "by virtue of payments made, [the] plaintiff ha[d]

become subrogated to the rights of its insured" after plaintiff paid out an insurance claim

pursuant to a duly authorized insurance policy (citation omitted)); *Great N. Ins. Co. v. Constab

Polymer-Chemie GmbH & Co.*, No. 01-CV-882, 2007 WL 2891981, at *2, *8 (N.D.N.Y. Sept.

28, 2007) (stating that insurer was subrogated to the rights of the insured because the "[insurer]

compensated [the insured] pursuant to the insurance policy"); *Gen. Sec. Ins. Co. v. Nir*, 858

17

N.Y.S.2d 18, 19 (App. Div. 2008) (finding that the "[p]laintiff insurer was subrogated to its

insured's rights after it made payment on the insured's claim").

### 2.    Negligence

Great American's allegations plausibly allege a prima facie case of negligence.  While

Great American's allegation that "Boom had a duty to use reasonable care when performing,

supporting, and/or overseeing the roof replacement of the [Property]" is a legal conclusion,

(Third-Party Compl. at 2, ¶ 12), it is supported by the factual context of the nature of Boom's

work and the foreseeable risk of harm.  Great American alleges that Boom was hired by Plaintiff

to replace the roof at the Property.  (*Id.* at 2, ¶ 3.)  It further alleges that Boom removed the

ballast layer used to secure the roof membrane without implementing any temporary ballast or

other stabilizing mechanism.  (*Id.* at 2, ¶¶ 4–6.)  These factual allegations plausibly support the

existence of a duty on the part of Boom to exercise reasonable care when performing its

contracted work.  *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 593–94 (S.D.N.Y.

2022) (holding that the plaintiff plausibly alleged that the defendant "owed a duty to reasonably

safeguard [the] [p]laintiffs' personal information" because the defendant stored the plaintiffs'

information on their servers, the defendant was in the best position to protect the information,

and the defendant knew it was the target of cyberattacks); *see also Milligan v. GEICO Gen. Ins.

Co.*, No. 16-CV-240, 2017 WL 9939046, at *6 (E.D.N.Y. July 14, 2017) ("Where a person

contracts to do certain work[,] he is charged with the common law duty of exercising reasonable

care and skill in the performance of the work required to be done by the contract." (citing

*William Wrigley Jr. Co. v Waters*, 890 F.2d 594, 602 (2d Cir. 1989))), *report and

recommendation adopted*, 2018 WL 3632690 (E.D.N.Y. Mar. 31, 2018), *aff'd*, *Milligan v. CCC

Info. Servs. Inc.*, 920 F.3d 146 (2d Cir. 2019); *Saxby v. LPS Field Servs., Inc.*, 902 F. Supp. 2d

302, 305 (W.D.N.Y. 2012) (finding that the plaintiff sufficiently pled common law negligence

18

because the plaintiff alleged that the defendant was the "contractor . . . who controlled, supervised, and/or managed the repairs for the property in question" and referenced an agreement that "appear[ed] to establish" a contractor relationship) (citations omitted)); *Reade v. Reva Holding Corp.*, 818 N.Y.S.2d 9, 16 (App. Div. 2006) (explaining that defendant contractors "had a common-law duty . . . to exercise reasonable care" when performing their work).

Great American has also sufficiently alleged that Boom failed to use reasonable care in performing, supporting, and/or overseeing the roof replacement project and the property damage was a foreseeable harm. (Third-Party Compl. 2, ¶ 6; 3, ¶ 13.) Specifically, Great American asserts that Boom removed the ballast of the roof which is "used to hold down the membrane on the roof" and left the membrane unsecured because Boom "failed to install [a] temporary ballast or to utilize any other mechanism to adhere the existing membrane to the roof deck." (*Id.* at 2, ¶¶ 4–6.) The complaint adequately supports an inference that Boom, as a contractor hired to replace the roof, was aware that it should secure the membrane, and that not securing the membrane could cause it to come loose and lead to property damage. Accepting these allegations as true, Plaintiff has plausibly alleged a breach of duty and foreseeable harm. *Javed v. Shuang Zhang*, 872 F. Supp. 2d 194, 201 (N.D.N.Y. 2012) (finding allegations sufficient to show breach of duty where the plaintiff claimed that "the [c]ounty breached its duty to adequately design, construct, and maintain [a] particular portion of the [road] in a reasonably safe condition" because of the road configuration, lack of traffic signals, and absence of separate bus lanes); *see also Koeller v. Numrich Gun Parts Corp.*, 675 F. Supp. 3d 260, 265, 269–70 (N.D.N.Y. 2023) (finding allegations sufficient to sustain a negligence claim where the plaintiffs alleged that the defendant "breached its duty to safeguard their personal information" by failing to secure and handle their customer data, supervise its agents, and timely notify the plaintiffs of a

data breach and was aware that the plaintiffs' systems and security were inadequate); *Liberty Mut. Ins. Co*, 2008 WL 190310, at *2, *16–17 (finding that the plaintiff stated a prima facie negligence claim by alleging that the defendant "failed to fulfill [its] common law duty to exercise reasonable care and skill" when it "performed [its] work in a . . . defective manner" and failed to prevent water infiltration into the project area and subsequent water damage (first and second alteration in original) (citation omitted)).

Finally, Great American's allegations are sufficient to demonstrate damages.  In its Complaint, Great American alleges that "as a result of the interior water damage to the [Property], [Wellsville Manor] has sustained at least $450,000 in property damage and $150,000 in loss of business income."  (Third-Party Compl. 2, ¶ 8.)  In drawing all inferences in Great American's favor, Great American has plausibly alleged damages resulting from the breach of duty.  *See Koeller*, 675 F. Supp. 3d at 270 (finding that the plaintiffs sufficiently pleaded damages even if "discovery may reveal that [they] did not suffer any actual or ascertainable damages").

### iii.  Damages

Great American seeks $10,000 in damages – the amount it paid to Plaintiff.[4]  In support, Great American has submitted a declaration from Mike Nelson, a senior claim specialist with Great American.  (*See* Nelson Decl.)  The Court finds that the requested amount is reasonably certain and supported by the record.  Therefore, the Court grants Great American's request for damages totaling $10,000.  *See United States v. Spiegel*, No. 19-CV-5456, 2022 WL 5114462, at

---

[4]  Plaintiff and Great American have stipulated to dismiss the first-party action between them with prejudice, including all claims and counterclaims.  (Stipulation of Dismissal, Docket Entry No. 83.)  While Great American sought to recover from Boom the $10,000 it had already paid to Plaintiff pursuant to the Policy and any additional amount for which Great American may be found liable to Plaintiff in the primary action, because of the dismissal, the Court will only consider the $10,000 as damages.

*4 (E.D.N.Y. Sept. 30, 2022) (granting plaintiff's requests for damages because "the amounts requested were fair, reasonable, and supported by the record"); *Trs. for Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, & Training Program Fund v. Inniss Constr., Inc.*, No. 19-CV-9942, 2019 WL 6830307, at *1 (S.D.N.Y. Dec. 13, 2019) (awarding damages after finding that "the total amount of the award is easily ascertainable from the pleadings and the record, and it is suitable to enter default judgment without inquest" (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974))).

### III. Conclusion

For the foregoing reasons, the Court grants Evanston's motion and dismisses Boom's Fourth-Party Action against Evanston.  The Court also grants Great American's motion for default judgment and awards damages against Boom in the amount of $10,000 to Great American.

Dated: July 31, 2025
      Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge